IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TELEBRANDS CORPORATION, | ) | Case No. 1:23-cv-00631-BMB |
| | ) | |
| Plaintiff, | ) | Judge Bridget Meehan Brennan |
| | ) | |
| v. | ) | |
| | ) | |
| WINSTON PRODUCTS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT WINSTON PRODUCTS LLC'S</u>**
**<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.      INTRODUCTION ........................................................................................................1

II.     ARGUMENT ................................................................................................................3

      A.     Telebrands' description of the Patents-in-Suit is misleading. ...................................3

      B.     The Meaning of the Group A Terms: "secured to"; "to couple"; "coupled to" ................................................................................................................6

               1.     Telebrands' position regarding the Group A Terms improperly broadens them and is inconsistent with the claim language, the specifications, and principles of claim construction law. ...........................6

               2.     The claims in the Patents-in-Suit use "secured to," "to couple/coupled to" consistent with Winston's proposed constructions. ...........................................................................................8

               3.     Well-established claim construction principles foreclose Telebrands' arguments. ....................................................................9

               4.     The Federal Circuit recently construed the term "secured" consistent with Winston's proposed construction....................................10

               5.     Telebrands' sloppy patent drafting does not broaden its patent claims. ...........................................................................................11

               6.     Winston's constructions are consistent with the usage in the Patents-in-Suit..............................................................................12

               7.     Telebrands misconstrues the dependent claims to support its constructions. ...................................................................................15

      C.     The Meaning of the Group B, Group C, and Group D Terms ..............................17

               1.     "Securing Device" in the Group D Terms should be construed under 35 U.S.C. § 112 ¶ 6.........................................................18

III.    CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
   346 F.3d 1082 (Fed. Cir. 2003) ................................................................. 6

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
   73 F.3d 1573 (Fed. Cir. 1996) ............................................................. 2, 16

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
   262 F.3d 1258 (Fed. Cir. 2001) ........................................................ 12, 13

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
   224 F.3d 1308 (Fed. Cir. 2000) ................................................... 8, 10, 11

*Fullview, Inc. v. Polycom, Inc.*,
   No. 23-1201, 2024 WL 1843686 (Fed. Cir. Apr. 29, 2024) .................... 10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ................................................................ 2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ..................................................... 6, 7, 14

*PSC Computer Products, Inc. v. Foxconn Intern., Inc.*,
   355 F.3d 1353 (Fed. Cir. 2004) .............................................................. 12

*Terlep v. Brinkmann Corp.*,
   418 F.3d 1379 (Fed. Cir. 2005) ................................................................ 1

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ............................................................... 12

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015) .............................................................. 18

**Statutes**

35 U.S.C. § 112 ................................................................................... 18, 19

35 U.S.C. § 132(a) ................................................................................... 4

**Regulations**

37 C.F.R. § 1.75(c) ................................................................................... 9

I.     **INTRODUCTION**

The Court should reject the positions advanced in Plaintiff Telebrands Corporation's ("Telebrands") Opening Claim Construction Brief ("Pl.'s Opening Br." (Doc. 39)). Telebrands' positions are misleading, ignore the context of the Patents-in-Suit and patent claims, and cause further ambiguity regarding the disputed claim terms, especially "secured to" and "to couple/coupled to." As discussed in Winston's Opening Claim Construction Brief ("Def.'s Opening Br." (Doc. 40)),[1] the inconsistent use of the synonymous terms "secured to" and "to couple/coupled to" in the Patents-in-Suit created drafting ambiguities that this Court can and should resolve during claim construction. However, contrary to Telebrands' Opening Brief arguments regarding Winston's positions, the inherent problem with these patents lies with Telebrands—or its predecessor patentee—which had every opportunity to review the patents before issuance and draft them precisely. Telebrands' failure to do so should not penalize Winston, and Telebrands should not benefit from this poor drafting. Indeed, as discussed below, Telebrands violates fundamental principles of patent law by taking positions that improperly broaden the Patents-in-Suits' coverage to mask their ambiguities.[2]

Throughout claim construction, Telebrands has maintained that the disputed terms in the Patents-in-Suit do not require any construction and that a person of ordinary skill in the art ("POSITA") would easily understand the plain and ordinary meaning of the terms. But even Telebrands' expert got confused when trying to explain whether a photo from his own report

---

[1] The exhibits to Winston's Opening Brief are referenced throughout this Responsive Brief with accompanying citations to their docket numbers.

[2] Telebrands would have the Court change the scope of the claims to cover a broader set of products than that contemplated by the claim language and specification. "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, ***but not to change***, the scope of the claims." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005) (internal citations omitted) (emphasis added).

showed a simple garden hose "coupled to" or "secured to" a spigot. *See* Def.'s Opening Br. 14-16. Telebrands and its expert are simply unwilling—or perhaps unable—to provide any definitions regarding the meaning and scope of the disputed terms, arguing instead that "secured to" and "to couple/coupled to" cover essentially the same thing. *See* Pl.'s Opening Br. 11 (arguing that "secured to" includes "permanent" and "non-permanent" connections), 15 (arguing that "to couple/coupled to" includes "removable, semi-permanent, or permanent" connections). Faced with the ambiguity created by using these synonymous terms in patent claims, Telebrands' untenable position is woefully inadequate in resolving the present dispute.[3] These circumstances demand that the disputed terms be construed narrowly: "Where there is an equal choice between a broader and a narrower meaning of a claim . . . we consider the notice function of the claim to be best served by adopting the narrower meaning." *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996).

Winston's Opening Brief includes proposed claim constructions that are consistent with how the inventors used "secured to" and "to couple/coupled to" in the claims and throughout the specification. By contrast, Telebrands' approach magnifies the ambiguities currently present in the Patents-in-Suit, making it impossible to determine exactly what the patents protect. Because Winston's proposed claim constructions clarify ambiguities in the claims and would assist the jury in determining non-infringement and invalidity of the Patents-in-Suit, the Court should adopt Winston's proposed constructions.

---

[3] *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.").

## II.   ARGUMENT

### A.   Telebrands' description of the Patents-in-Suit is misleading.

As an initial matter, it is worth pointing out how Telebrands' description of the Patents-in-Suit in its Opening Brief is misleading. Each Party's brief addresses the Patents-in-Suit and the construction and function of the claimed hoses. *See* Pl.'s Opening Br. § II; Def.'s Opening Br. § II.A. While Winston carefully describes the hoses in language consistent with the specification and claims and provides a citation for each sentence describing an element, Telebrands improperly adds additional details in their descriptions of the Patents-in-Suit, using verbiage that is simply not disclosed in the specification or claims. Moreover, Telebrands asserts these details in lengthy run-on sentences or blocks of text that allegedly are supported by lengthy string citations to the Patents-in-Suit. For example, in the excerpts of Telebrands' Opening Brief reproduced below, the underlined text does not appear anywhere in the text of the Patents-in-Suit.

> "… a flow restrictor 37 (<u>e.g., a ball valve</u>) connected to the second coupler 16 for controlling the flow of water through the hose.



> *Id.*, Figs. 1, 7-8, 14:65-15:36."

Pl.'s Opening Br. 3 (Fig. 1 not reproduced).

> In operation: (1) the first coupler is <u>attached to</u> a water source and the second coupler is <u>connected to</u> a spray nozzle <u>with the flow restrictor in the closed position</u>; (2) the water source is turned on and pressurized water is introduced to the hose through the first coupler and into the flexible inner tube <u>with the flow restrictor of the second coupler closed</u>, thereby preventing the pressurized water from exiting the flexible inner tube; (3) at this point, the flexible inner tube fills with pressurized water resulting in an increase in water

> pressure within the interior of the flexible inner tube, causing the flexible inner tube to expand radially and longitudinally, which in turn causes the flexible outer tube to expand along the length of the flexible inner tube until the expansion of the flexible inner tube becomes constrained by the fully expanded outer tube. *Id.*, Figs. 1, 5-6, 7-8, Abstract, 6:65-7:3, 9:36-10:56, 14:65-15:36.

*Id.* at 3-4.

First, the Patents-in-Suit only mention the use of a valve once: "Many nozzles are L-shaped so as to be able to be comfortably gripped and used by an individual. These nozzles also have a pivoting on-off handle which operates an internal valve. This internal valve permits, limits, and stops the flow of water through the nozzle . . . ." '870 Patent 10:15-19. This language describes a conventional pistol-grip (or L-shaped) nozzle that can be coupled to the end of a hose—***not a ball valve***. While Telebrands also points to reference numeral 37 in Figure 7, the figures do not provide support for a ball valve either. Reference number 37 points to a nondescript feature within the male coupler 16. There is simply no space for a ball valve in any of the Figures in the Patents-in-Suit. The specification provides "a separate flow restrictor 37 is illustrated within coupler 16. Other types of flow restrictors, such as hose nozzles, sprayers, etc. can also be employed. Anything that controls the release of the liquid exiting the hose can be employed." *Id.* at 10:67-11:4. Notably, the flow restrictor is never described as a ball valve.

It is a foundation of patent law that new matter, or new information, cannot be added to a patent's specification once the application has been filed. *See* 35 U.S.C. § 132(a). Shockingly, Telebrands now attempts to add new matter ***years*** after the Patents-in-Suit were granted in order to broaden their patents to cover Winston's products. Specifically, as described above, Telebrands is attempting to add a ball valve and operation steps related to the ball valve that do not appear in the disclosure of the Patents-in-Suit. *See* Pl.'s Opening Br. 3-4. This cannot be allowed. If a patent applicant is prohibited from adding new matter ***while the patent application is still pending***, the

4

patent owner is certainly prohibited from adding new matter to the patent ***years after it has been granted***.

Telebrands further attempts to broaden its patents by injecting further ambiguity into the use of "attached to" and "connected to" by adding two additional synonyms to the equation. The drafter of the patent used both "attached" and "connected" within the Patents-in-Suit; however, the two terms are always used in conjunction with "secured," "coupled," or each other, indicating that they have different meanings. "Attached" and "connected" are not used as alternatives, as Telebrands uses them here. *See* '870 Patent 1:47-53, 9:1-4, 12:49-52, 12:58-64. As an example, the specification provides "[t]he ten-foot inner tube 14 and the 50-foot outer tube 12 and the expansion restrictor sleeve 27 are then all attached *and* secured together on a coupler at the first end." '870 Patent 12:49-52 (emphasis added). If the patent drafter intended for these words to be used interchangeably, the patent drafter could have treated them as alternatives by connecting them with "or." But the patent drafter did not treat these words as being interchangeable, and it is now too late for Telebrands to amend this poor patent drafting to fit its current litigation position.

Telebrands would likely counter these points by asserting that a POSITA would know these differences. Indeed, Telebrands' approach to numerous problems with the Patents-in-Suit has been to rely on its expert to compensate for the patents' shortcomings, including Telebrands' position that the Disputed Terms do not need to be construed. Telebrands' approach it have its expert waive his POSITA wand over the patents, claiming the Disputed Terms are understandable in their favor in each instance, although the expert refuses to define anything. But as Winston's expert, Dr. Feland, explained, the patents' ambiguities cannot be resolved without construction by the Court.

B.    **The Meaning of the Group A Terms: "secured to"; "to couple"; "coupled to"**

| Claim Term | Defendant's Construction |
|---|---|
| **"secured to"** | "affixed or attached firmly so it cannot be readily removed from" |
| **"to couple"** | "to removably connect" |
| **"coupled to"** | "removably connected to" |

1.  *Telebrands' position regarding the Group A Terms improperly broadens them and is inconsistent with the claim language, the specifications, and principles of claim construction law.*

Telebrands baldly asserts, with no explanation, that "nothing in the claims themselves, suggests that 'secured' should be limited to something that cannot be readily removed." Pl.'s Opening Br. 9. Similarly, Telebrands contends that "nothing in the claims themselves suggests that ["to couple" and "coupled to"] should be limited to include the extraneous limitation of a removable connection." *Id.* at 13. Telebrands' contentions deviate from the claim language, the specifications, and established principles of claim construction law. As discussed in Winston's Opening Brief, the claims and specifications of the Patents-in-Suit are rife with context that supports Winston's offered constructions, demonstrating that they are correct. Def.'s Opening Br. § IV.B. "The context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning" of the Disputed Terms. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he person of ordinary skill in the art is deemed to read the claim term ***not only in the context of the particular claim*** in which the disputed term appears, ***but in the context of the entire patent***, including the specification." (emphasis added)).

Claim 1 of the '870 Patent[4] contains a single claim element using *both* "secured" and "couple:"

---

[4] This is also applicable to Claim 1 of the '278 Patent and Claim 1 the '915 Patent.

> "a first coupler **secured to** said first end of said inner and outer tubes, said first coupler constructed **to couple** said hose to a source of pressurized liquid"

'870 Patent Claim 1. In other words, "secured to" and "to couple" must be construed in the context of both words appearing in the same claim limitation. Although it insists the plain and ordinary meaning of "secured to" and "to couple" applies (but without definition), Telebrands cannot deny these terms are synonymous, yet it fails to reconcile them. Telebrands has provided no guidance on the meaning of "secured to" and "to couple/coupled to." Instead, Telebrands relies primarily on extrinsic evidence—dictionaries and expert testimony—but is unwilling to use any of these sources as the basis for providing any proposed constructions of the disputed terms. This counterproductive approach is ambiguous and contradicts established claim construction principles, providing no understanding to determine when or if infringement exists. While extrinsic evidence "may be useful," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope **unless considered in the context of the intrinsic evidence**." *Phillips*, 415 F.3d at 1318-19 (emphasis added). Courts must reject extrinsic evidence "that is clearly at odds with the claim construction mandated by . . . the [intrinsic] record." *Id.* at 1318. In contrast to Telebrands' positions, Winston's claim constructions construe "secured to" and "to couple/coupled to" in the context of the claims overall, as supported by the specification, thereby reconciling the meaning and scope of each term with the other.

In the claim excerpt cited above, "secured to" relates to attaching the coupler to the inner and outer tubes, a type of connection which necessarily implies longevity (*i.e.*, not readily removed). "To couple" has a different purpose—it refers to the temporary (*i.e.*, removable) attachment between the hose coupler and the house faucet or spigot. Because the patents used two different terms to cover two different functions in the same claim element, the law presumes they have different meanings and scope. *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,

7

224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, [courts] must presume that the use of . . . different terms in the claims connotes different meanings."). Nothing in Telebrands' Opening Brief accounts for this fundamental principle.

    2.  *The claims in the Patents-in-Suit use "secured to," "to couple/coupled to" consistent with Winston's proposed constructions.*

The annotated Figure 8 below shows the different uses of "secured to" and "to couple" as described in the representative claim element above:



According to the specification of the Patents-in-Suit, the female coupler 18 includes a threaded portion 28 "to couple to a faucet or a water outlet on the exterior or interior of a house or residence." '870 Patent 8:54-57. As such, in the claim element, the relevant portion of the specification, and Figure 8, "to couple" means "to removably connect," as Winston suggests.

Conversely, the '870 patent describes the female coupler being "secured to" the inner tube and outer tube in a way that is "affixed or attached firmly so it cannot be readily removed from" the inner tube and outer tube:

> FIG. 8 illustrates the female coupler 18 secured to the hose of the present invention. The hose in FIG. 8 is in the contracted condition. The female coupler 18 is provided with a plurality of internal threads 28 . . . The female coupler 18 also includes a tubular extension 36 which extends into the interiors of the inner tube 14,

Case: 1:23-cv-00631-BMB  Doc #: 41  Filed: 05/23/24  12 of 22.  PageID #: 1600


> the outer tube 12 and the expansion restrictor sleeve 27. The tubular extension 36 has a hollow interior 38 through which fluids can flow. A securing device 40 encompasses the outer sleeve 27, the outer tube 12, and the inner tube 14 and secures these elements to the tubular extension 36.

'870 Patent 11:20-33.

Indeed, the **only** examples given in the '870 Patent of securing the couplers to the inner tube and outer tube are consistent with a definition of "secured" that is not readily removed:

> Other types of connections, **such as clamping and swaging** can also be employed to secure the female coupler to the inner tube 14, the outer tube 12, and the sleeve 27.

'870 Patent 11:45-47 (emphasis added). The Patents-in-Suit describe the connection of the male coupler to the inner tube and outer tube in near identical terms as the connection of the female coupler. *See* '870 Patent 11, 13-16 (describing securing the male coupler to the inner tube and outer tube by "clamping or swaging"). Nor does the '870 patent **ever** describe a connection between the couplers and the inner tube and outer tube that is not "affixed or attached firmly so it cannot be readily removed."

### 3. *Well-established claim construction principles foreclose Telebrands' arguments.*

The patentee had every opportunity to review the Patents-in-Suit before issuance and make them precise. In fact, Telebrands had multiple opportunities over the more recently issued patents in the Telebrands patent family to correct these ambiguities. Each of the Patents-in-Suit uses "to couple" and "secured to" in the same manner in Claim 1. Therefore, because "[c]laims in dependent form shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim," "to couple" and "secured to" are used in the same way in every single one of the Asserted Claims. 37 C.F.R. § 1.75(c). Telebrands could have changed the language of the claims to correct the ambiguity caused by using "to couple" and "secured to" in the same claim, but it never did. Telebrands' use of these terms in the same claim is either

9

deliberate or poor patent drafting. Either way, as described above, "[courts] must presume that the use of . . . different terms in the claims connotes different meanings." *CAE Screenplates Inc.*, 224 F.3d at 1317.

       4. *The Federal Circuit recently construed the term "secured" consistent with Winston's proposed construction.*

Telebrands argues for the "plain meaning" of "secured," which it says includes both permanent and non-permanent connections. But the U.S. Court of Appeals for the Federal Circuit's recent ruling in *FullView, Inc. v. Polycom, Inc.*, No. 23-1201, 2024 WL 1843686 (Fed. Cir. Apr. 29, 2024) contradicts Telebrands' position. In *FullView*, the Federal Circuit affirmed the district court's construction of "'the . . . devices being **secured** to the support member' to mean '**fix[ing] or attach[ing]** the . . . devices **firmly** to the support member **so that** [the . . . devices] **cannot be moved**.'" *Id.* at *6, *10 (emphasis added). The Federal Circuit noted the district court stated that "[t]he key to attachment or fastening . . . is that it does not allow movement." *Id.* It even approved of the district court's reliance on dictionary definitions of "secure" relied on by the district court ("to attach or fasten something so that it does not move" and "to fasten one object firmly to another") as consistent with FullView's proposed construction. *Id.* at *7. Although the subject matters of the patent in *FullView* and the Patents-in-Suit here are different, the *FullView* construction of "secured" is nearly identical to Winston's construction (when the language regarding the structures at issue in *Fullview* are removed):

| *FullView* construction of "secured to" | Winston's Construction of "secured to" |
| --- | --- |
| 'fix[ing] or attach[ing] the . . . devices firmly to the support member so that [the . . . devices] cannot be moved.'" | "affixed or attached firmly so it cannot be readily removed from" |

5. *Telebrands' sloppy patent drafting does not broaden its patent claims.*

Telebrands faults Winston's definition of "secured to," arguing Winston's definition is contrary to parts of the specification. Pl.'s Opening Br. 10. Telebrands points out that at some points the specification uses "secured to" in reference to the "coupled" connection between the hose coupler and the faucet on the exterior of a house. *Id.* While this is true, it is not true for the claims, which do not use "secured to" in reference to the "coupled" connection between the coupler and the faucet/spigot. This demonstrates how sloppily the Patents-in-Suit were drafted. Telebrands' inability to describe its invention in a clear way should not act to broaden the scope of the claims.

Telebrands further states that the Patents-in-Suit "repeatedly use[] the words 'secure' or 'secured' to describe a removable attachment instead of an attachment that is firm such that it cannot be readily removed." Pl.'s Opening Br. 10.[5] Telebrands provides two examples of "secure" or "secured" being used in this fashion in the specification. *Id.* By contrast, as highlighted in Winston's Opening Brief, "secure" or some variant thereof is used to describe the connection between the coupler and the inner and outer tubes over 25 times. *See* Def.'s Opening Br. 10-11; *see also* '870 Patent Abstract, 7:5-10, 7:62-67, 8:44-50, 8: 61-64, 10:57-59, 10:65-67, 11:13-16, 11:20-22, 11:31-33, 11:45-47, 12:49-52, 12:58-64. Comparatively, Telebrands' labeling the two instances where "secured" describes a removable attachment as "repeated" falls flat when contrasted with the over 25 uses of "secured" throughout the specification that support Winston's construction.

---

[5] By drawing attention to the inconsistencies in the specification rather than admitting them to be sloppy drafting, Telebrands conflates the meaning and scope of "secured to" with the meaning and scope of "coupled to." This cannot be right. *See CAE Screenplates Inc.*, 224 F.3d at 1317 ("the use of . . . different terms in the claims connotes different meanings").

11

The Patents-in-Suit consistently and pervasively use "secured to" to describe connections that cannot be readily removed and "to couple/coupled to" to describe connections that are removable. *See* Def.'s Opening Br. 10-12. The outlier instances where "secure" is used to describe the connection of the hose to a faucet in the specification or the "removeably secured" connection of a flow restrictor to the hose in claim 11 are simply examples of inadvertent errors in drafting or sloppy drafting. "The patentee, rather than the public, must bear the burden of inadvertent errors in the patent . . . ." *PSC Computer Products, Inc. v. Foxconn Intern., Inc.*, 355 F.3d 1353, 1361 (Fed. Cir. 2004). Accordingly, rather than proposing definitions that are contrary to the specification, Winston is simply applying the definitions that the patentee has implicitly given to the terms "secured to" and "to couple/coupled to" through their dominant use in the claims and specification.

6. *Winston's constructions are consistent with the usage in the Patents-in-Suit.*

Telebrands faults Winston's constructions for being narrower than how the word "secured" is defined in industry and for allegedly reading limitations into the claim that depart from the plain language of the claims. Pl.'s Opening Br. 10-11, 14-15. Telebrands further asserts that Winston's claim constructions are not supported by the intrinsic record and are not otherwise required by inventor lexicography or disavowal. *Id.* at 9, 13. But the exact opposite is true. The patentee narrowed "secured to" by using it in the context of "to couple" and by acting as its own lexicographer by defining the Disputed Terms through implication. "The specification acts as a dictionary when it expressly defines terms used in the claims *or when it defines terms by implication*." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (emphasis added). "The specification may define claim terms 'by implication' such that the meaning may be 'found in or ascertained by a reading of the patent documents.'" *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) (internal citations omitted).

12

"[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" *Id.* at 1271.

Even common sense dictates the definitions that Winston proffers. The hose connection to the faucet on a house must be removable, as garden hoses are not permanently affixed to faucets. That is why the coupler typically includes threads. Common sense indicates that the hose must be removable so that it can be attached to different faucets on a house or removed and stowed when not in use, in particular to avoid damage to the faucet or hose components in the winter. As for the coupler being secured to the inner tube and the outer tube, it also makes sense that this connection would be "affixed or firmly attached so it cannot be readily removed." In the patented hose, a user would not want the inner and outer tubes separating from the coupler during use, causing water to escape everywhere. Indeed, that is why the Patents-in-Suit use a securing device to affix or firmly attach the inner and outer tubes to the coupler to prevent them from being readily removed.

As stated previously, Telebrands and its expert Dr. Glancey have repeatedly refused to define the meaning of "secured to" and "to couple/coupled to." At the same time, Telebrands and Dr. Glancey have indicated that the plain and ordinary meaning of both "secured to" and "to couple/coupled to" allow for removable/non-permanent, semi-permanent, or permanent connections. *See* Pl.'s Opening Br. 11, 15; Sur-Rebuttal Decl. of Dr. James L. Glancey ("Glancey Sur-Rebuttal") ¶¶ 49, 52, 66 (Doc. 40-12). On one hand, Telebrands faults Winston for importing limitations into the claims that are actually supported by the specification. On the other hand, Telebrands and Dr. Glancey ignore the context within the specification and import meaning to the Disputed Terms from outside of the specifications of the Patents-in-Suit, essentially based only on extrinsic evidence. This approach is even worse than what the claims do on their own—it enhances the ambiguity already present in the claims even further by equating the meaning of two different

13

terms, thereby making it impossible for anyone to differentiate between "secured to" and "to couple/coupled to."

Telebrands also raises a nonsensical argument, stating that Winston doesn't "believe" its own constructions because Winston revised its proposed claim construction throughout the claim construction process. Pl.'s Opening Br. 1, 8 n.4, 12. This argument ignores that preliminary claim constructions are not set in stone and that the process embodied in the Local Patent Rules expressly contemplates an iterative process whereby the parties "meet and confer for the purposes of limiting the terms by narrowing or resolving differences and facilitating the ultimate preparation of a Joint Claim Construction and Prehearing Statement." L.P.R. 4.1(b). Winston has done just that. Telebrands has also engaged in this process by negotiating the meaning of terms. If Telebrands' argument on this point were taken seriously, Telebrands' following the Local Patent Rules and engaging in negotiations with Winston regarding proposed claim terms would evidence that Telebrands also did not believe in its own proposal that the claim terms be given their plain and ordinary meaning. Moreover, the fact that Telebrands—and its proffered expert—could not articulate the plain and ordinary meaning that it expects the jury to employ demonstrates that Telebrands does not have any explanation for what the terms in its own patents actually mean.

As Winston has progressed through the Local Patent Rule disclosures and expert discovery, it has refined its proposed claim constructions based on the repetitive and thorough analysis of the Patents-in-Suit that is required to make sense of their claims' ambiguous language, as well as working through expert discovery. This iterative process is not only a fundamental aspect of rigorous claim construction, but a demonstration of Winston's commitment to accuracy and clarity in interpreting the patent claims in question—as expressly contemplated by this Court's Local Patent Rules. Claim construction is inherently an evaluative and iterative process, guided by the principles set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). Winston's refining

14

of its proposed claim constructions is not only appropriate, but exemplifies the conscientious and rigorous engagement that this Court encourages and that patent litigation demands. Ultimately, Winston has minimally changed its original claim constructions to attempt to narrow or resolve issues arising in the construction of the Disputed Terms, and these good faith efforts should not be penalized.

7.  *Telebrands misconstrues the dependent claims to support its constructions.*

Telebrands argues claim differentiation. Specifically, it argues that use of the adverb "removeably" prefacing "secured" in claim 11 means that the "secured" cannot mean "affixed or firmly attached so it cannot be readily removed." But this actually gets the argument backwards. The fact that Telebrands had to modify "secured" by adding "removably" means the definition it gave to "secured" in the Patents-in-Suit did not contemplate a removable connection. Otherwise, the addition of "removably" would have been superfluous. Moreover, as noted above, the Patents-in-Suit are hardly a model of clarity, and thus not much weight can be given to the lone usage of "secured" in claim 11 in this fashion.

Telebrands makes multiple arguments that Winston's constructions lead to logical inconsistencies between claims. Specifically, Telebrands asserts Winston's construction of "secured to" creates inconsistencies or excludes embodiments between '870 Patent Claims 1 and 11. *See* Pl.'s Opening Br. 9. Telebrands also asserts Winston's construction of "to couple" creates inconsistencies or excludes embodiments between '870 Patent Claims 1 and 10. *See* Pl.'s Opening Br. 13-14. For example, Telebrands argues that the flow restrictor of claim 1 cannot be both "coupled to" or "removably connected" and "integrally formed" with the coupler. But that Patents-in-Suit contain no description of how a flow restrictor can be integrally formed with a coupler. Rather, all the '870 patents says is that a "separate flow restrictor 37 is illustrated within coupler 16," or that a user can "secure a nozzle or other flow restrictor on one end of the hose," or

15

that "a flow restrictor [is] coupled to said second coupler." '870 Patent 10:67-11:4, 12:30-31, Claim 1. All of these instances are further examples of how carelessly the Patents-in-Suit were drafted, not evidence that the words can mean the same thing in the same claim clause.

Telebrands has maintained the argument that a POSITA would easily understand the meaning of the Disputed Terms. But Telebrands' own preferred expert disproves this notion. Dr. Glancey—a self-proclaimed POSITA at the time of the initial patent application in 2011 and someone who has studied the Patents-in-Suit in depth—was nonetheless confused by the meanings of "coupled" and "secured" in the Patents-in-Suit when presented with an image from his own Sur-Rebuttal Report. *See* Def.'s Opening Br. 14-16 (citing Deposition of James L. Glancey, Ph.D. ("Glancey Dep.") at 177:11-180:6 (Doc. 40-16)). Thus, even Telebrands' hand-picked POSITA cannot make sense of the inconsistencies, ambiguities, and poor drafting present in the claims and specifications of the Patents-in-Suit.

Given that Telebrands' patents are replete with inconsistencies, construing "secured to" and "to couple/coupled to" presents a challenge, one which Winston has met head-on, unlike Telebrands, which has simply punted. Faced with these inconsistencies and ambiguities in its patents, Telebrands' approach to claim construction is a complete failure, offering no clarity and resolving nothing. Thus, either these terms are indefinite because their meaning and scope cannot be determined—rendering Telebrands' patents invalid—or Winston's proposed definitions should be adopted. *See Athletic Alternatives,* 73 F.3d at 1581 (Fed. Cir.1996) ("Where there is an equal choice between a broader and a narrower meaning of a claim . . . we consider the notice function of the claim to be best served by adopting the narrower meaning.").

Because Winston's proposed constructions are the *most* consistent with the invention described in the patents, the Court should adopt Winston's constructions.

C.     **The Meaning of the Group B, Group C, and Group D Terms**

**Group B Terms-**

**"said inner and outer tubes unsecured between said first and second ends so that said outer tube is not held in frictional contact with said inner tube so that said outer tube can move freely along said inner tube"**

**"said inner tube is unsecured to said outer tube between said first and second ends so that said outer tube can move freely over said inner tube"**

**"said flexible inner tube unsecured to said flexible outer tube between said first and second ends so that said flexible outer tube can move freely over said flexible inner tube"**

**Group C Terms-**

**"a first restrictor sleeve secured to said first end of said inner and said outer tubes" / "a first restrictor sleeve secured to said first end of said flexible inner tube and said flexible outer tube"**

**"a second restrictor sleeve secured to said second end of said inner and said outer tubes" / "a second restrictor sleeve secured to said second end of said flexible inner tube and said flexible outer tube"**

**Group D Terms-**

**"a first securing device securing said first restrictor sleeve, said outer tube, and said inner tube to said first coupler" / "a first securing device securing said first restrictor sleeve, said flexible outer tube, and said flexible inner tube to said first coupler"**

**"a second securing device securing said another expansion restrictor sleeve, said outer tube, and said inner tube to said second coupler" / "a second securing device securing said second expansion restrictor sleeve, said flexible outer tube, and said flexible inner tube to said second coupler"**

The Group B, Group C, and Group D Terms are generally extensions of "secured to" and "to couple/coupled to," which are discussed above. As such, the discussion of the Group A Terms is informative and equally applicable to the Group B, Group C, and Group D Terms. Telebrands' inconsistent, ambiguous, and sloppy drafting necessitates that the Disputed Terms be construed by

17

the Court. Telebrands' position that no construction is necessary and that the plain and ordinary meaning of the claims should apply would only create further ambiguity and ultimately does nothing to help the jury determine if the Patents-in-Suit have been infringed or are invalid.

Accordingly, Winston asks the Court to adopt its proposed constructions of the Group B, Group C, and Group D Terms.

1. *"Securing Device" in the Group D Terms should be construed under 35 U.S.C. § 112 ¶ 6.*

Telebrands' insistence that 35 U.S.C. § 112 ¶ 6 does not apply to "securing device" is simply incorrect. Telebrands cannot point to any definite structure within the claims for the claimed securing devices. The "securing device" is only ever described by its function of securing the inner and outer tubes to either the first or the second coupler. This is true for both the claims and the specification. *See* Def.'s Opening Br. 22-24; '870 Patent 10:65-67, 11:31-33, claim 7; '278 Patent claim 7; '915 Patent claim 6. After removing the functional language from the description of the securing devices in the claims and the specification, all that remains is "device." "Generic terms such as 'mechanism,' 'element,' '*device*,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) (internal citations omitted) (emphasis added). A "device" has no special meaning to a POSITA in any industry; it is simply a generic term. There is nothing in the claims that gives "device" any definite structure, much less a sufficiently definite structure. The only structure that Telebrands can point to is in the specifications of the Patents-in-Suit, not the claims. Therefore, because the claims do not contain sufficiently definite structure for the claimed "securing devices," the "securing devices" must be construed under 35 U.S.C. § 112 ¶ 6 and must be construed to mean

18

the limited structures disclosed within the specifications of the Patents-in-Suit. *See* Def.'s Opening Br. 22-24.

Therefore, Winston requests that the Court hold that "securing device" should be construed under 35 U.S.C. § 112 ¶ 6.

## III.    <u>CONCLUSION</u>

For the above reasons, and those articulated in Winston's Opening Claim Construction Brief, Winston respectfully asks the Court to adopt its proposed constructions for the Disputed Terms in the Asserted Claims of the Patents-in-Suit.

Respectfully submitted,

*/s/ Nicholas Clifford*
Nicholas Clifford (*pro hac vice*)
TUCKER ELLIS LLP
100 South Fourth Street – Suite 600
St. Louis, MO 63102-1822
Telephone:  314-256-2550
Facsimile:  314.256.2549
Nicholas.Clifford@tuckerellis.com

Jeffrey C. Sindelar Jr. (0084252)
TUCKER ELLIS LLP
950 Main Avenue – Suite 1100
Cleveland, OH  44113-7213
Telephone:  216.592.5000
Facsimile:   216.592.5009
Jeffrey.Sindelar@tuckerellis.com

*Attorneys for Defendant Winston Products LLC*