UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TELEBRANDS CORP., | ) | CASE NO. 1:23-CV-631 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| WINSTON PRODUCTS LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

This matter is before the Court upon the request of the parties to resolve a dispute over the construction of patent claim terms pursuant to *Markman v. Westview Instruments*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Plaintiff Telebrands Corp. ("Telebrands") and Defendant Winston Products LLC ("Winston") filed opening claims construction briefs. (Docs. 39, 40.) Both parties filed reply briefs. (Docs. 41, 42.) On July 24, 2024, the Court held a *Markman* hearing. (Doc. 45.) For the reasons below, the Court finds no construction is necessary for the disputed patent claim terms.

I.  BACKGROUND

Telebrands owns U.S. Patent Nos. 10,174,870 ('870 Patent), 10, 890,278 ('278 Patent), and 11,608,915 ('915 Patent) (collectively, the "Asserted Patents"). Telebrands sued Winston asserting patent infringement of various claims in the Asserted Patents. Specifically, Telebrands alleges Winston infringed on the following claims:

- Claims 1, 3, 5-7, 10, 12, 13, and 15 of the '870 Patent
- Claims 1, 3, 5-7, 10, and 12-14 of the '278 Patent
- Claims 1, 2, 4-6, 9, and 11-13 of the '915 Patent

(Doc. 40 at 1161-62.)[1] The Asserted Patents relate to an "Expandable and Contractible Garden Hose" product that automatically expands when water is turned on and contracts when water is turned off. (Doc. 39 at 638.) The design and configuration allows the hose to be coiled and compact when not in use, but fully expandable like a regular hose when in use. (*Id.*)

As shown in Figures 1 and 8 below, a hollow flexible outer tube (12) is positioned around a hollow flexible inner tube (14), both of which are secured to a coupler (18) that can be connected to a source of pressurized water. (Doc. 39-1 at 668.) Both the outer tube (12) and inner tube (14) are also secured to a second coupler (16) which can be connected to a nozzle. (*Id.*) The outer tube (12) and inner tube (14) are unsecured between the two couplers to allow for expansion. (*Id.*) The outer tube restricts expansion after a certain point, containing the inner tube's expansion. (Doc. 39 at 639.)




The parties' claims construction dispute is primarily limited to two sets of terms used in four groupings throughout the Asserted Patents. These disputed claim terms are: "secured"/"securing"/"unsecured" and "to couple"/"coupled to." (Doc. 39 at 636; Doc. 40 at 1163.) For example, Claim 1 of the '278 Patent and '915 Patent contains the following language (disputed terms in bold):

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

> A garden hose comprising . . . a flexible elongated outer tube . . . a flexible elongated elastic inner tube . . . a first coupler **secured to** said first end of said inner and said outer tubes, said first coupler constructed **to couple** said hose to a source of pressurized liquid . . . a second coupler **secured to** said second end of said inner and said outer tubes, said inner and outer tubes **unsecured** between said first and second ends so that said outer tube is not held in frictional contact with said inner tube so that said outer tube can move freely along said inner tube[.]

(Doc. 39-2 at 697; Doc. 39-3 at 716.) Claim 5 of those same patents contains the following language:

> The garden hose of claim 1 including a first restrictor sleeve **secured to** said first end of said inner and said outer tubes, and a second restrictor sleeve **secured to** said second end and said inner and said outer tubes[.]

(Doc. 39-2 at 697; Doc. 39-3 at 716.)

## II.  CLAIMS CONSTRUCTION STANDARD

Claims construction is a matter of law. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326, 135 S.Ct. 831, 135 L.Ed.2d 719 (2015); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "The purpose of claim construction is to determin[e] the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citation and quotation omitted).

"[C]laim construction must begin with the words of the claims themselves." *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019) (quoting *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006)). "Words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art [POSITA] after reviewing the intrinsic record at the time of the

invention." *O2 Micro*, 521 F.3d at 1360 (citing *Phillips*, 415 F.3d at 1312-13). Absent an express intent to the contrary, patentees are presumed to have intended ordinary and customary meaning of a claim term. *York Prods., Inc. v. Cent. Tractor Farm & Fam. Ctr.*, 99 F.3d 1568, 1572 (Fed. Cir. 1996).

A court's review of a claim term begins with the intrinsic record, "including the written description, the drawings, and the prosecution history[.]" *Allergan Sales*, 935 F.3d at 1373. Claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315. "In some cases, the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

Claims "must be read in view of the specification, of which they are a part." *Id.* at 1315. In fact, the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996).

A court may also consider extrinsic evidence, which "is generally of less significance than the intrinsic record." *Allergan Sales*, 935 F.3d at 1373 (quoting *Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016)). Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1355 (Fed. Cir. 2013) (quoting *Phillips*, 415 F.3d at 1317). These sources include "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."

*Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116).  Courts should not rely on extrinsic evidence if it contradicts the claim language or intrinsic evidence.  *Vitronics*, 90 F.3d at 1584.

There are only two exceptions to the general rule the words of a claim are given their ordinary and customary meaning as understood by a POSITA: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."  *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics*, 90 F.3d at 1580).

"To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning."  *Id.* (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term."  *Id.* (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)).

"The standard for disavowal of claim scope is similarly exacting."  *Id.* at 1366.  For disavowal, "[t]he patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."  *Id.* (citations and quotations omitted).

After review of the record, a court may determine a claim term needs no construction and its plain and ordinary meaning should apply.  *O2 Micro*, 521 F.3d at 1360.  However, a "determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning'

may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* at 1361.

### III. ANALYSIS

#### A. Agreed-To Terms

Prior to the claims construction hearing, the parties agreed to a construction of three claim terms. (Doc. 43 at 1703.) Those claim terms and agreed-to constructions are detailed in the chart below:

| Claim Term | Agreed-To Construction |
|---|---|
| "First coupler" | "A first connecting device/fitting" |
| "Second coupler" | "A second connecting device/fitting" |
| "Extend around an outer circumstance of said hose" | "Extend around the outside of the hose" |

"[T]he court has an independent obligation to construe the terms of a patent." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1323-24 (Fed. Cir. 2008). The court "need not accept the constructions proposed by either party." *Id.* at 1324. This includes agreed-to constructions. *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, No. 23-cv-598, 2024 WL 895156, 2024 U.S. Dist. LEXIS 35842, at *7 (N.D. Ohio Mar. 1, 2024) ("The Court is not required to accept a construction of a term, even if the parties have stipulated to it") (citing *Pfizer, Inc. v. Teva Pharms., USA Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005)).

Consistent with its independent obligation to do so, the Court finds the agreed-to constructions are consistent with the plain and ordinary meaning a POSITA would attribute to the claim terms. The constructions are also supported by the intrinsic record and each construction will assist the Court and jury. The agreed-to claim terms are adopted.

**B. Group A Terms**

The parties' first dispute the terms "secured," "to couple," and "coupled to" (identified by the parties as the "Group A" terms). The parties' proposals are summarized in the chart below:

| Disputed Term | Telebrands' Proposal | Winston's Proposal |
|---|---|---|
| "secured"<br><br>(Claims 1 and 5 of '870 Patent, Claims 1 and 5 of '278 Patent, and Claims 1 and 4 of the '915 Patent) | Plain and ordinary meaning; no construction necessary | "affixed or attached firmly so it cannot be readily removed from" |
| "to couple"<br><br>(Claim 1 of '870 Patent, Claim 1 of '278 Patent, Claim 1 of '915 Patent" | Plain and ordinary meaning; no construction necessary | "to removably connect" |
| "coupled to"<br><br>(Claim 1 of '870 Patent, Claim 1 of '278 Patent) | Plain and ordinary meaning; no construction necessary | "removably connected to" |

The crux of the dispute is whether "secured to" should be construed to mean a permanent connection and whether "to couple" should be construed to mean a non-permanent connection. Telebrands argues the terms "secured" and "couple" are readily understandable terms and require no construction. (Doc. 39 at 646.) To Telebrands, "secure" does not describe the type of connection other than two things that are attached and nothing in the claims or specifications indicate it used the term "secure" in any other fashion. (*Id.*) Similarly, Telebrands asserts "couple" also does not describe the type of connection other than two things that are attached and nothing in the claims or specifications indicate it used the term "couple" in any other fashion. (*Id.* at 650.) Winston argues a POSITA, in light of the claims, would understand "secured to" to mean "affixed or attached firmly so it cannot be readily removed from" and "to couple" to mean "to removably connect." (Doc. 40 at 1166.) Essentially, Winston argues for a construction of the

term "secure" to mean a more permanent connection, while the term "couple" means a non-permanent connection. (*Id.*)

The terms "secure" and "couple" "are commonly understood words" that require "nothing more than the application of the widely accepted meaning." *Phillips*, 415 F.3d at 1314. After a review of the intrinsic record, the claim terms "secure" and "couple" have no special meaning beyond the plain and ordinary meaning of the terms. Each are used in the claims and specifications in accordance with their plain and ordinary meaning and neither are used in a way that is "so far out of the realm of common experience that a juror could not understand its meaning." *Terves LLC v. Yueyang Aerospace New Materials Co., Ltd.*, No. 19-cv-1611, 2021 WL 1172332, 2021 U.S. Dist. LEXIS 59644, at *9 (N.D. Ohio Mar. 29, 2021).

Nothing in their plain or ordinary meaning, nor the claims or specifications, limits their definition in the way Winston proposes. A POSITA may understand the term "secure" to mean affix or firmly attach, but a POSITA would not interpret the term "secure" to mean *only* a permanent connection. And a POSITA may understand the term "couple" to mean affix or firmly attach, but a POSITA would not interpret the term "couple" to mean *only* a non-permanent connection. The patent does not specify the type of connection at all other than to call them "secure" or "coupled." Telebrands was free to use a broad term and is entitled to the full scope of that term's meaning. *Thorner*, 669 F.3d 1367 (a "patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning").

Further, Winston's proposed constructions do not provide further clarification of the terms "secure" and "couple." "The criterion [for claims construction] is whether the explanation aids the court and the jury in understanding the term as it is used in the claimed invention." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1366-67 (Fed. Cir. 2010). Winston's

proposed constructions largely "wordsmith" Telebrands' chosen terms and the ordinary meaning of those terms.  Without more, Winston's proposed constructions are more likely to confuse the jury rather than aid it or the Court.  *See Am. Pat. Dev., Corp. v. Movielink, LLC*, 604 F.Supp.2d 704, 716 (D. Del. 2009) (rejecting construction that is "merely a verbose paraphrasing of the claim language that otherwise offers little to assist one of skill in the art in understanding the claims").  In sum, Winston has not shown its constructions of "secured" and "couple" are necessary, consistent with the plain or ordinary meaning of the terms as understood by a POSITA, or helpful to the Court or jury.

To avoid this conclusion, Winston argues its construction is appropriate because Telebrands acted as its own lexicographer by implication.  In support of Winston's arguments regarding lexicography, Winston argues "secure" and "couple" are synonyms relating to the joining of two things.  (Doc. 40 at 1166-67.)  Because each are used throughout the claims, Winston argues the Court must give meaning to each term.  *Exxon Chem. Pats., Inc. v. Lubrizol*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) (a court "must give meaning to all words in [the] claims").  Winston relatedly argues a court "must presume that the use of these different terms in the claims connotes different meanings."  *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).  Thus, Winston argues because the claims use both "secure" and "couple," and because those words are synonyms, the Court must give each a distinct meaning.  Otherwise, there would be no reason to use different words to mean the same thing.  This interpretation, Winston asserts, is aligned with the use of "secure" and "couple" throughout the claims.  (Doc. 40 at 1167.)  For instance, Winston says the claims consistently use "secure" when discussing a permanent connection and "couple" when discussing a non-permanent one.  (*Id.* at 1167-68.)  While Winston recognizes there are some instances where the claims do not

follow that pattern, it speculates that this is due to "sloppy drafting" and nothing more meaningful.

The "implied" redefinition of the term "secure" or "couple" is not "so clear that it equates to an explicit one." *Thorner*, 669 F.3d at 1368. Instead, the intrinsic record supports Telebrands used the term "secure" to refer to multiple different types of connections and did not otherwise limit the meaning of the term. As the Federal Circuit has explained, "[i]f the intrinsic record supports several definitions of a term, the term may be construed to encompass all such consistent meanings." *Wasica Fin. GmbH v. Cont'l Auto Sys.*, 853 F.3d 1272, 1281 (Fed. Cir. 2017) (citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1343 (Fed. Cir. 2001)). And the Federal Circuit has held the consistent use of two terms is not sufficient, in and of itself, to find lexicography or disavowal. *Thorner*, 669 F.3d at 1368 (holding that while the "use of two terms as alternatives could amount to an implicit redefinition of the terms," "[s]imply referring to two terms as alternatives or disclosing embodiments that all use the term the same way is not sufficient to redefine a claim term").

Winston relies heavily on the recent Federal Circuit decision in *FullView, Inc. v. Polycom, Inc.*, No. 18-cv-510, 2024 WL 1843686, 2024 U.S App. LEXIS 10266 (Fed. Cir. Apr. 29, 2024). *FullView* does not aid Winston's claims construction arguments, and actually supports the opposite conclusion. In *FullView*, the district court construed the term "secure" to mean "fix[ing] or attach[ing] the . . . devices firmly . . . so that [the devices] cannot be moved." *Id.* at *18. The issue was whether something could be "secured" to another object through the use of an intermediary, there, a bracket. *Id.* The district court held "the plain meaning of the term 'secured' allows for two objects to be fastened or attached in some way, such as with bolts and

welding, without direct contact between the two objects." *Id.*  Relying on dictionary definitions, the court held the "key to attachment or fastening is that it does not allow movement." *Id.*

*FullView* is inapposite here for two main reasons.  First, Winston's proposed construction here adds an additional limitation to what the *FullView* court considered: that not only should "secured to" mean "affixed or firmly attached," it must also mean "cannot be readily removed from."  *Fullview* only interpreted "secure" to mean something that cannot be *moved*, not something that cannot be *removed*.  Second, and more critically, the *FullView* court explicitly rejected a construction that would require two objects to be directly connected to each other, finding that no definition of "secure" includes that requirement.

Telebrands cites more relevant and persuasive authority.  In *Integrity Worldwide, LLC v. Rapid-Eps Ltd.*, the court rejected a similar argument Winston makes here.  No. 17-cv-55, 2018 WL 3609430, 2018 U.S. Dist. LEXIS 234462 (N.D. Tex. May 29, 2018).  There, the patents-in-suit related to support posts and safety fences typically used by construction companies to prevent workers and equipment from falling.  *Id.* at *4.  The claims construction dispute included the terms "secured," "secured within said one tube," and "secured to the stem."  *Id.* at *25.  Defendant asserted the term should be construed to include the additional description that to be "secured" means something that is not movable and something that is "permanently affixed."  *Id.* at *27, 31.  The court held that the plain and ordinary meaning should prevail, and no construction was required because the patent did not ascribe any "special meaning" to the term "secure" that would require any further description.  *Id.* at *27.

> As it relates to whether "secure" necessarily means permanent, the court explained:
>
> While something that is affixed or welded is secured, within the plain and ordinary meaning of the word, the plain and ordinary meaning of "secured" is not limited to describing a relationship between two objects where the objects are permanently

>affixed to each other. The plain and ordinary meaning is broader than this and includes non permanent ways of securing an object.

*Id.* at *32-33. The same is true here. There is no special meaning of "secured" found in the claims, and the plain and ordinary meaning applies. That meaning includes both permanent and non-permanent connections.

Another court similarly found no construction was necessary for the claim terms "secured," "attached," "coupled," and "coupling." *Dogleg Right Partners, LP v. Taylor Made Golf Co.*, No. 07-cv-533, 2011 WL 1100145, 2011 U.S. Dist. LEXIS 29474, at *40 (E.D. Tex. Mar. 22, 2011). In *Dogleg Right Partners*, the patents-in-suit related to golf clubs which had customizable club heads allowing a player to modify the center of gravity with attachable weights. *Id.* at *3. Defendant argued for a construction which would construe "secure" and related terms to mean "fastened directly to" the interior of the cavity of the club. *Id.* at *38-39. The court rejected this construction because nothing in the patents supported defendant's construction that required the weights to be "fastened directly to" the wall of the club head. *Id.* at *39. In so holding, the court explained "[n]othing in the patents indicates that the patentee used the secured, attached, and coupled terms . . . in a manner inconsistent with their ordinary meaning." *Id.* at *40. Thus, the court held "that the 'secured,' 'attached,' 'coupled,' and 'coupling' terms are used in a context that reflects their plain and ordinary meaning" and did not require additional construction. *Id.* Similarly, here, Winston's construction attempts to add additional limitations not supported by the patents.

Winston's reliance on extrinsic evidence is also unpersuasive. Winston presents dictionary definitions of "secure" to support its proposed construction that the term means something "more fixed and firm than just merely connected or joined." (*Id.*) But again, the plain

and ordinary meaning necessarily requires that something is firmly fixed or fastened, not that something is fixed or fastened with the measure of permanence Winston urges.

    C.    **Group B Terms**

The parties' next dispute the term "unsecured" as it is used in Claim 1 of the '870 Patent, Claim 1 of the '278 Patent, and Claim 1 of the '915 Patent (identified by the parties as the "Group B" terms). The parties' proposals are summarized in the chart below:

| **Disputed Term** | **Telebrands' Proposal** | **Winston's Proposal** |
|---|---|---|
| "Said inner and outer tubes unsecured between said first and second ends so that said outer tube is not held in frictional contact with said inner tube so that said outer tube can move freely along said inner tube"<br><br>(Claim 1 of '870 Patent) | Plain and ordinary meaning; no construction necessary | "The inner and outer tubes are not affixed or attached firmly except at their first and second ends so that the outer tube can move freely along the inner tube between the couplers" |
| "Said inner tube is unsecured to said outer tube between said first and second ends so that said outer tube outer tube [sic] can move freely over said inner tube"<br><br>(Claim 1 of '278 Patent) | Plain and ordinary meaning; no construction necessary | "The inner tube is not affixed or attached firmly to the outer tube except at their first and second ends so that the outer tube can move freely along the inner tube between the couplers" |
| "Said flexible inner tube unsecured to said flexible outer tube between said first and second ends so that said flexible outer tube can move freely over said flexible inner tube"<br><br>(Claim 1 of '915 Patent) | Plain and ordinary meaning; no construction necessary | "The flexible inner tube is not affixed or attached firmly to the flexible outer tube except at their first and second ends so that they flexible outer tube can move freely over the flexible inner tube" |

Winston's proposed construction largely rests on the logical premise that if "secured" means "affixed or firmly attached so it cannot be readily removed from," then "unsecured" must

mean "not affixed or firmly attached."  (Doc. 40 at 1179.)  Winston does not offer any other arguments.

For the same reasons the Court rejects Winston's construction of "secured," so too does it reject Winston's proposed construction of  "unsecured" as "not affixed or firmly attached."  Like "secured," the meaning of "unsecured" is readily apparent.  Winston does not argue Telebrands acted as its own lexicographer, or that it disavowed any meaning of the term "unsecured" other than arguments addressed above.

### D. Group C Terms

The parties dispute the claim phrases used Claim 5 of the '870 Patent, Claim 5 of the '278 Patent, and Claim 4 of the '915 Patent (identified by the parties as the "Group C" terms).  The parties' proposals are summarized in the chart below:

| **Disputed Term** | **Telebrands' Proposal** | **Winston's Proposal** |
|---|---|---|
| "A first restrictor sleeve secured to said first end of said inner and said outer tubes"<br><br>(Claim 5 of '870 Patent, Claim 5 of '278 Patent) | Plain and ordinary meaning; no construction necessary | "A device that restricts the expansion of the inner tube and is affixed or attached firmly so it cannot be readily removed from the first end of the inner tube and the first end of the outer tube" |
| "A first restrictor sleeve secured to said first end of said flexible inner tube and said flexible outer tube"<br><br>(Claim 4 of '915 Patent) | | "A device that restricts the expansion of the inner tube and is affixed or attached firmly so it cannot be readily removed from the first end of the flexible inner tube and the first end of the flexible outer tube" |
| "A second restrictor sleeve secured to said second end of said inner and said outer tubes"<br><br>(Claim 5 of '870 Patent, Claim 5 of '278 Patent) | Plain and ordinary meaning; no construction necessary | "A device that restricts the expansion of the inner tube and is affixed or attached firmly so it cannot be readily removed from the second end of the inner tube and the second end of the outer tube" |

| | | |
|---|---|---|
| "A second restrictor sleeve secured to said second end of said flexible inner tube and said flexible outer tube"<br><br>(Claim 4 of '915 Patent) | | "A device that restricts the expansion of the inner tube and is affixed or attached firmly so it cannot be readily removed from the second end of the flexible inner tube and the second end of the flexible outer tube" |

The parties agree their dispute about the Group C terms mirrors their dispute about the Group A terms, namely, whether "secured" should be construed to mean "affixed or attached firmly so it cannot be readily removed." (Doc. 39 at 654; Doc. 41 at 1609.) For the reasons stated above, the plain and ordinary meaning of "secure" will control and no further construction is necessary.

E.   **Group D Terms**

Lastly, the parties dispute the claim phrases as used in Claim 7 of the '870 Patent, Claim 7 of the '278 Patent, and Claim 6 of the '915 Patent (identified by the parties as the "Group D" terms). The parties' proposals are summarized in the chart below:

| **Disputed Term** | **Telebrands' Proposal** | **Winston's Proposal** |
|---|---|---|
| "A first securing device securing said first restrictor sleeve, said outer tube, and said inner tube to said first coupler"<br><br>(Claim 7 of '870 Patent, Claim 7 of '278 Patent)<br><br>"A first securing device securing said first restrictor sleeve, said flexible outer tube, and said flexible inner tube to said first coupler"<br><br>(Claim 6 of '915 Patent) | Plain and ordinary meaning; no construction necessary | "A device encompassing and affixing or attaching firmly the first restrictor sleeve, the first end of the outer tube, and the first end of the inner tube to the first coupler so they cannot be readily removed"<br><br>"A device encompassing and affixing or attaching firmly the first restrictor sleeve, the first end of the outer tube, and the first end of the inner tube to the first coupler so they cannot be readily removed" |

| | | |
|---|---|---|
| "A second securing device securing said another expansion restrictor sleeve, said outer tube and said inner tube to said second coupler"<br><br>(Claim 7 of '870 Patent, Claim 7 of '278 Patent)<br><br>"A second securing device securing said second expansion restrictor sleeve, said flexible outer tube and said flexible inner tube to said second coupler" (Claim 6 of '915 Patent) | Plain and ordinary meaning; no construction necessary | Subject to 35 U.S.C. § 112, ¶ 6; Indefinite under 35 U.S.C. § 112, ¶ 2<br><br>"a device encompassing and affixing or attaching firmly the second restrictor sleeve, the second end of the outer tube, and the second end of the inner tube to the second coupler so they cannot be readily removed"<br><br>"a device encompassing and affixing or attaching firmly the second restrictor sleeve, the second end of the outer tube, and the second end of the inner tube to the second couple so they cannot be readily removed"<br><br>Subject to 35 U.S.C. § 112, ¶ 6; Indefinite under 35 U.S.C. § 112, ¶ 2 |

As an initial matter, Winston concedes that the arguments presented in support of its definition of "secure" in Group A apply to its definition of "secure" in Group D. (Doc. 40 at 1181.) For the same reasons the Court rejected Winston's proposed definitions in Group A terms construction, Winston's proposed definitions of the Group D terms are also rejected.

Winston also argues that the term "securing device" used in the Group D disputed phrases should be interpreted under 35 U.S.C. § 112, ¶ 6. (Doc. 40 at 1182.) Telebrands claims—and Winston does not dispute—Winston waived this argument because Winston did not identify the structures, acts, or materials corresponding to the term's function in dispute. LPR 4.2(c) requires such a disclosure prior to claims construction briefing. LPR 4.2(c) (final claims construction "shall" be exchange and "shall also, for each term which any party contends is governed by 35 U.S.C. § 112(6), identify the structure(s), act(s), or material(s) corresponding to that term's

function."). Winston raised § 112, ¶ 6 in its final claims construction, but it did not identify the structures, acts, or materials corresponding to the securing devices' function. (Doc. 39-10.) Winston's failure to comply with LPR 4.2(c), precludes Winston from making any § 112, ¶ 6 argument now.

IV. **CONCLUSION**

For the reasons explained above, the disputed claims, when read in the context of the specifications of which they are a part, do not warrant construction and will be given their plain and ordinary meanings.

**IT IS SO ORDERED.**

Date:  June 3, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE